[No. C055471. Third Dist. May 28, 2008.]

JAY LANGE, Plaintiff and Respondent, v.
ROXANNE SCHILLING et al., Defendants and Appellants.

## Counsel

Triebsch, Frampton, Dorius & Lima and Cory B. Chartrand for Defendants and Appellants.

June Babiracki Barlow and Neil D. Kalin for California Association of Realtors as Amicus Curiae on behalf of Defendant and Appellant Segerstrom Real Estate, Inc.

Gagen, McCoy, McMahon, Koss, Markowitz & Raines and Charles A. Koss for Plaintiff and Respondent.

## OPINION

**HULL, J.**—The standard California residential purchase agreement bars attorney fees for a party who commences litigation without first attempting to mediate the dispute. Plaintiff Jay Lange filed his complaint before seeking mediation but, after plaintiff prevailed at trial, the trial court nonetheless awarded him attorney fees. We agree with other courts that the agreement means what it says: plaintiff's failure to seek mediation precludes an award of attorney fees. We therefore reverse the order.

### FACTS AND PROCEEDINGS

We do not have the record of the underlying trial, but the parties agree on the basic relevant facts. In 2003, plaintiff Jay Lange bought a lake house from Dwight and Linda St. Peter (sellers). The sellers were represented by defendants Roxanne Schilling and Segerstrom Real Estate, Inc. Plaintiff, a real estate broker, represented himself in the transaction.

The parties utilized the standard California residential property purchase agreement (the agreement). Paragraph 22 of this agreement provides: "In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A."

Paragraph 17A of the agreement (paragraph 17A) in turn states: "Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. . . . If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action."

On March 15, 2004, plaintiff filed a complaint against sellers and defendants alleging causes of action for failure to disclose, negligence, fraud, and suppression of fact. Plaintiff's complaint outlined various construction problems as well as misrepresentations that sellers and defendants had made regarding the lake level.

Plaintiff did not know sellers' whereabouts and could not immediately serve the complaint. On May 11, 2004, plaintiff hired an investigator to locate sellers, and on May 27, 2004, the investigator reported a mailing address for sellers at "Mail and Messages" in Pahrump, Nevada. Plaintiff served the complaint by mail the next day, May 28.

Plaintiff twice unsuccessfully sought entry of a default, and ultimately sellers' default was entered on August 23, 2004.

At some point, sellers and plaintiff made contact. On September 7, 2004, plaintiff's attorney wrote to sellers' attorney to respond to some of his concerns. The letter concluded: "You will notice that the contract contains a mediation/arbitration clause. Prior to filing the complaint, both my client and my staff undertook research to determine the present address of the [sellers] so that a demand for mediation could be made. We were unsuccessful in finding any address other than the 'mail drop' in Nevada. Your offices are in Stockton so I suspect that the [sellers] may be living close to Stockton. My client is willing to stay the litigation at this point (i.e., default has been entered but no judgment requested) in order to mediate the matter should the [sellers] so desire. Perhaps we could choose a mediator in Concord or some other location halfway between our offices. I have no idea as to whether or not the brokers would participate. Please let me know immediately if your clients do wish to mediate; otherwise, we will assume that both parties are waiving paragraph 17 of the sales agreement in its entirety."

The record does not contain a response to this letter, but plaintiff subsequently filed an amended complaint and the parties stipulated to set aside the default. Sellers filed an answer on October 22, 2004, and the matter went to trial.

The jury returned a mixed verdict on the various causes of action, finding that plaintiff was damaged only by misrepresentations about the lake level, and the jury apportioned comparative fault to the parties. Ultimately, the court entered a judgment in favor of plaintiff for $13,475, finding defendants and sellers jointly and severally liable.

Plaintiff filed a motion for $113,096.03 in attorney fees from sellers, asserting that as the prevailing party, he was entitled to fees under paragraph 22 of the agreement.

The sellers entered into a settlement agreement with plaintiff, assigning plaintiff all causes of action they might have against defendants, including their right to reimbursement for attorney fees and costs under this agreement or the residential listing agreement. Plaintiff agreed to look solely to defendants for the satisfaction of any judgment. The settlement agreement also

provided that sellers were to receive 40 percent of any amounts over $100,000 that plaintiff was successful in recovering against defendants for reimbursement of attorney fees.

Defendants opposed the motion for attorney fees, arguing that plaintiff was not entitled to fees because he did not attempt to mediate the dispute before filing his complaint as required by paragraph 17A of the agreement.

The trial court ruled: "Plaintiff offers reasonable justification for failing to offer mediation prior to filing suit: He could not locate the [sellers]. He knew they moved from their last known residence in Copperopolis, CA and were traveling in California and Nevada in an RV. A pre-litigation attempt to locate an address by an internet search was unsuccessful. After suit was filed, plaintiff hired an investigator to locate the [sellers] in order to achieve service of process. The skip-tracer found their address within 16 days."

The court further found that plaintiff substantially complied with paragraph 17A "by offering to stay the litigation in order to mediate the matter. The [sellers] did not respond to plaintiffs' offer. The court cannot say they suffered any prejudice due to the tardy offer to mediate in that, at the time plaintiff offered to mediate, the [sellers] had not filed any responsive pleading."

The court awarded plaintiff $80,710.26 in fees, an amount reflecting the fees incurred after plaintiff's offer to mediate.

This appeal followed.

### DISCUSSION

Defendants challenge the court's award of attorney fees on several grounds, but we address only one. Defendants contend that the clear language of the agreement precludes an award of attorney fees if a party does not attempt mediation before commencing litigation. Because plaintiff filed his lawsuit before offering mediation, they argue, there was no basis to award fees and the court's order must be reversed. We agree.

"An appellate court reviews a determination of the legal basis for an award of attorney fees independently as a question of law." (*Leamon v. Krajkiewcz* (2003) 107 Cal.App.4th 424, 431 [132 Cal.Rptr.2d 362].)

While paragraph 22 of the agreement authorizes attorney fees to the prevailing party in a dispute between a buyer and seller, that right is contingent on compliance with paragraph 17A. Again, this provision states: "If, for any dispute or claim to which this paragraph applies, any party

commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action."

Plaintiff filed his complaint first and only later offered mediation. His failure to meet the condition precedent required by paragraph 17A precludes any award of fees.

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)

In *Frei v. Davey* (2004) 124 Cal.App.4th 1506 [22 Cal.Rptr.3d 429], the court construed paragraph 17A, and concluded that it "means what it says and will be enforced." (*Id.* at p. 1508.) "To recover attorney fees under the [a]greement, a party cannot commence litigation before attempting to resolve the matter through mediation." (*Id.* at p. 1516; accord, *Van Slyke v. Gibson* (2007) 146 Cal.App.4th 1296, 1299 [53 Cal.Rptr.3d 491]; *Johnson v. Siegel* (2000) 84 Cal.App.4th 1087, 1101 [101 Cal.Rptr.2d 412] ["[s]eeking mediation is a condition precedent to the recovery of attorney fees . . ."].)

This strong policy in favor of mediation is understandable. "In mediation, a neutral third party analyzes the strengths and weaknesses of each party's case, works through the economics of litigation with the parties, and otherwise assists in attempting to reach a compromise resolution of the dispute." (*Frei v. Davey, supra*, 124 Cal.App.4th at p. 1514.) "[T]he public policy of promoting mediation as a preferable alternative to judicial proceedings is served by requiring the party commencing litigation to seek mediation as a condition precedent to the recovery of attorney fees. . . . [H]ad the parties resorted to mediation, their dispute may have been resolved in a much less expensive and time-consuming manner." (*Leamon v. Krajkiewcz, supra*, 107 Cal.App.4th at p. 433; see also *Frei v. Davey, supra*, 124 Cal.App.4th at p. 1512.)

Here, plaintiff spent more than $113,000 in attorney fees to recover a $13,000 judgment. "The economic inefficiency of this result may have been avoided if, prior to judicial proceedings, a disinterested mediator had explained to [the parties] the costs of litigating the dispute through to a judgment or a final resolution by an appellate court." (*Leamon v. Krajkiewcz, supra*, 107 Cal.App.4th at p. 433.)

Plaintiff asserts that his failure to seek mediation should be excused because he was unable to locate sellers in order to make such a request. He asserts that once he located sellers, he "promptly offered to mediate," thereby

"more than substantially [complying] with the spirit and intent of the language of the contract." But plaintiff in fact was able to locate sellers. After filing his complaint, plaintiff hired an investigator and, two weeks later, when the investigator discovered the sellers' mailing address, plaintiff mailed them the complaint. Plaintiff could have readily complied with the requirements of paragraph 17A simply by hiring the investigator, learning sellers' whereabouts, and mailing an offer of mediation to them *before* filing his complaint. Instead, plaintiff filed his complaint first, then located sellers, and then, months later, offered mediation. As defendants note, "If the [sellers] could be found and served with a lawsuit by mail, they could have been sent a mediation demand by mail."

█ Plaintiff argues that his September 2004 offer to mediate constituted substantial compliance with paragraph 17A. The doctrine of substantial compliance is not applicable in this situation. Paragraph 17A sets forth a clear and unambiguous condition precedent that must be met in order for attorney fees to be awarded: the party must attempt mediation *before* commencing litigation. By filing his complaint before attempting mediation, plaintiff lost any right to attorney fees. Paragraph 17A is designed to encourage mediation at the earliest possible time. This provision would become meaningless if a party were allowed to recover attorney fees by making a request for mediation after litigation has begun and then claiming substantial compliance. (See *Frei v. Davey, supra,* 124 Cal.App.4th at p. 1517 [mediation held shortly before trial date does not cure earlier refusal to mediate].)

Finally, plaintiff suggests that sellers waived the mediation provisions. The September 2004 letter of plaintiff's attorney to sellers concluded, "Please let me know immediately if your clients do wish to mediate; otherwise, we will assume that both parties are waiving paragraph 17 of the sales agreement in its entirety." The trial court did not base its decision on a waiver theory, presumably because the evidence presented did not support such a claim. Sellers' attorney stated in his declaration, "Although I cannot waive attorney-client privilege and cannot discuss the disposition of [this] letter without waiving attorney-client privilege, I can say that it was never my intent to waive any of the provisions of the [agreement] signed by my clients or any of my clients' rights and benefits under the contract."

█ Plaintiff had a clear and simple way to retain the right to attorney fees. All he had to do was attempt to mediate with sellers before he filed suit. Instead, he filed first and offered mediation later. Paragraph 17A bars recovery of any attorney fees by a prevailing party who does not first attempt mediation. (See *Frei v. Davey, supra,* 124 Cal.App.4th at p. 1517.) This provision "means what it says and will be enforced." (*Id.* at p. 1508.) The fee award must be reversed.

## DISPOSITION

The judgment (order) is reversed. Defendants are awarded their costs on appeal.

Davis, Acting P. J., and Cantil-Sakauye, J., concurred.